| t STEVEN R. PLOTKIN, Judge.
The defendant appeals his convictions and sentences for attempted armed robbery and possession of stolen property. For the reasons below, we affirm the decision of the trial court.
PROCEDURAL HISTORY
Jason Grainer and Kirk A. Baham were each charged by a five count bill of information with armed robbery (counts one through four), violation of La. R.S. 14:64, and possession of a stolen automobile valued at more than $500.00 belonging to Ms. Delores Moffett, violation of La. R.S. 14:69. At their arraignments, Grainer and Baham pled not guilty. The trial court granted the motion to sever the trials of Grainer and Baham.[1] The State amended the bill of information, to which Grainer pled not guilty, to correct the name of the count two armed robbery victim. The trial court denied motions to suppress the evidence, and once again granted a motion for severance. After a jury trial, Grainer was found guilty of attempted armed robbery and guilty of stolen property. The court sentenced Grainer to four concurrent forty-year sentences for the four attempted armed robbery convictions and to one con *558 current ten-year sentence for the |2possession of stolen property conviction. Grainer was adjudged a third felony offender. At sentencing the trial court vacated Grainer’s earlier sentence as to count one and re-sentenced him to forty years, without benefit of parole, probation or suspension of sentence, with credit for time served, sentence to run concurrently with the sentences in counts two through five.
STATEMENT OF FACTS
Ms. Delores Moffett testified that on the morning of Sunday, December 10, 2000, she reported that her 1994 blue Buick automobile had been stolen from her home sometime between 6:00 p.m. on December 9th and 10:00 a.m. Sunday December 10, 2000. The police later, found the car. When she recovered it, the car required extensive repairs. Ms. Moffett produced evidence that she purchased the car for $20,000. She testified that she did not know the defendant, and did not give him permission to use her car.
Ms. Lynette Williamson, a Sol’s Jewelry Store employee, testified that on December 10, 2000, at approximately 5:30 p.m., she and co-employee, Sadiq “Sam” Hirani, stood outside the store smoking, while Kirk Baham was in the store looking at jewelry. She noticed a light colored Buick in the parking lot. The car caught her attention because it was running, and was the only non-employee vehicle in the lot. Before she finished her cigarette, Jason Grainer exited the car brandishing a gun, and pushed her into the store. Kirk Ba-ham, also armed, pushed the four store employees to the bathroom in the rear of the store. Baham took money from the employees’ pockets while Grainer removed jewelry from the showcases, and rifled the cash register. Next, Grainer escorted Hirani to the front of the store to remove the tape from the store’s surveillance camera. Ms. Williamson viewed the videotape in court, and identified Mohammed Mohi-dudin 13and Fahim Akhtar[2], who were also robbed at gunpoint. Ms. Williamson identified the defendants and explained their actions as depicted in the video. She identified the green jacket worn by Grainer at the time of the robbery.
The Seventh District police station received notice via silent alarm system of an armed robbery in progress at Sol’s Jewelry Store in New Orleans East. Approximately ten minutes after the defendants entered the store, the police surrounded the building. When the robbers saw the police outside the store, they attempted to exit the store through a rear wall. When their attempts proved futile, and they found themselves surrounded, they held four store employees hostage while negotiating with police. After more than three hours the defendants surrendered, and were identified by their victims, as well as the store surveillance tape, as the perpetrators. The victims feared for their lives, and tried to talk the defendants into surrendering, going so far as telling the defendants that they would tell the police that the defendants were customers, and that the real robbers had escaped. When the victims and the defendants exited the store, Ms. Williamson and her co-employees identified the defendants as the perpetrators. She stated that Baham and Grainer acted together.
Detective Jason Gagliano testified that while he was on duty on December 10, 2000, the police dispatcher notified him of a robbery in progress at Sol’s Jewelry Store on Lake Forest Boulevard. He and Detective David Patrolia drove to the *559 scene where they met other task force officers. Detective Gagliano observed a suspect wearing a green jacket in the store holding a gun to the store manager’s head, and another to his back. He observed the suspect repeatedly walk the |4manager to the front of the store and then to the back, in an attempt to learn the location of the police. Detective Gagliano called in the SWAT team to negotiate with the suspects, while he and other officers maintained a perimeter around the store. Through the negotiations, Gagliano learned that the suspect wearing the green jacket was Jason Grainer. About three hours after the incident began, all the occupants of the store exited the premises and were handcuffed by police. As Gagli-ano inspected the store premises, he saw garbage bags full of jewelry on the floor, damage to store walls, a surveillance system VCR pulled off a shelf and other signs of damage and disarray. Gagliano also inspected the blue Buick vehicle parked in front of the store with its motor running. He observed that the steering column had been defeated and that the car was operating without a key in the ignition. Further investigation indicated that Ms. Delores Moffett, the owner of the vehicle, reported it stolen earlier that morning.
Detective David Patrolia corroborated Detective Gagliano’s testimony. Detective Patrolia also identified the physical evidence retrieved from the crime scene, a mask, green jacket and black gloves worn by Grainer, and the videotape recovered from the store surveillance system. As the tape was played for the jury, Patrolia identified Grainer in the tape holding a gun on a victim, reaching into the cash register and removing jewelry from display cases. He also testified that there were only six people in the store during the robbery, the four employees, Baham, and Grainer.
Detective Byron Adams testified that he arrived on the scene while the defendants held hostages. He helped secure the rear of the building and acted as liaison between the people inside the building and their families. After the robbers and the hostages came out of the store, Adams moved to the area where they were | (¡being held, and assisted in debriefing the witnesses/victims and processing the perpetrators. After initially refusing to give a statement to the police, Grainer waived his rights and gave a statement to Adams. In his statement, Grainer admitted that he was involved in the robbery but insisted he acted only as a “look out” for Kirk Baham, who he said planned and executed the robbery while Grainer “just stayed in the back with the people.” Grainer denied being armed at any time or holding a gun on any of the victims. Further, he said Baham turned on him, and treated him as a hostage along with the store employees.
Mohammed Mohidudin, the manager of Sol’s Jewelry Store, testified that on the day of the robbery, Kirk Baham entered the store ostensibly shopping for platinum jewelry. Baham jumped over the jewelry counter, and put a gun to Sadiq “Sam” Hirani’s head as Grainer herded him, Ms. Williamson, and Akhtar to the store bathroom at gunpoint. Mohidudin identified the green jacket worn by Grainer during the robbery, and identified the perpetrators in the store video recording of the events of December 10, 2000. At one point, the robbers removed Sam from the group to unlock the store’s cash register and display cases. While Mohidudin, Ms. Williamson and Akhtar were held in the bathroom, they were robbed at gunpoint of their valuables. Mohidudin testified that Hirani talked Grainer into giving up his gun by convincing him that all of the victims would tell the police that he was a customer caught up in the robbery.
*560 Sadiq “Sam” Hirani testified that he had been standing at the door of the store with Ms. Williamson when he noticed a car nearby with two men in it, one wearing a hood and green jacket, the other a black jacket. The man in the black jacket went into the store and asked about jewelry. Hirani felt uneasy about the situation so he went behind the counter so he would be able to reach the “panic |6button” on the store’s alarm system. Kirk Baham pointed a gun at Mm, as Jason Grainer rushed into the store. All of the people in the store were forced into the bathroom. The robbers removed Hirani from the bathroom and forced him to open the store safe and display cases. Grainer and Baham shouted to each other about taking money and jewelry. Hirani eventually talked Grainer into hiding the guns and pretending to be a customer, trapped in the store when Baham robbed it. When the hostage situation ended, Hirani identified Grainer as one of the armed robbers.
Jason Grainer testified that he was a customer at Sol’s Jewelry Store the night of the robbery. He had gone to purchase jewelry, and as soon as he entered the store, a masked gunman forced him to the rear of the store along with the store employees. He demed any involvement in the robbery, and said he did not know Kirk Baham. When he exited the store with the other hostages, the police arrested him, and charged him with armed robbery. The police transported him to the Seventh District police station, where he was detained for three hours. Further, he said Detective Adams forced him to sign a confession, threatening that he would never see his child again if he did not cooperate.
ERRORS PATENT
Counsel for defendant initially filed a brief requesting a review for errors patent. Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir. 1990). Counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. According to these cases, a brief filed on behalf of the indigent defendant by appointed counsel which provides “a detailed discussion of various aspects of the case, | including sufficiency of the evidence, the lack of objection to any of the testimony presented at trial, and the adequacy of the trial court’s compliance with Louisiana’s Sentencing Guidelines” is sufficient even if no errors are assigned. State v. Jyles, 704 So.2d at 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel initially moved to withdraw because she believed, after a conscientious review of the record, that there is no non-frivolous issue for appeal. Counsel reviewed available transcripts and found no trial court ruling, which arguably supports the appeal. A copy of the brief was forwarded to defendant, and this Court informed him that he had the right to file a brief in his own behalf, which he has done.
As per State v. Benjamin, this Court performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appeal record. Defendant was properly charged by bill of information with violations of La. R.S. 14:64 and La. R.S. 14:69, and the bill was signed by an assistant district attorney. Defendant was present and represented by counsel at arraignment, motion hearings, trial, and sentencing.
SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 1
In this assignment, the defendant argues the trial court erred by joining *561 for trial the armed robbery charges against him, La. R.S. 14:64, with the possession of stolen property charge, La. R.S. 14:69. He claims that trying the charges together denied him his due process rights under the correct “mode of trial”. He points out that the armed robbery charges against him subjected him to possible sentences of imprisonment “at hard labor for not less than ten years and for not more than ninety-nine years”, La. R.S. 14:64(B), while the possession of a stolen automobile exposed him to a possible sentence of imprisonment “with or without hard labor |afor not more than ten years”, La. R.S. 14:69(B)(1). Further, he shows that a trial for armed robbery requires a jury of twelve jurors, with ten concurring, but the trial for possession of a stolen automobile requires a six-member jury, with a unanimous verdict for conviction. La.C.Cr.P. art. 782(A).
At the outset it must be noted that under La.C.Cr.P. art. 495, an objection of misjoinder of offenses may only be urged by a motion to quash the indictment. The failure to urge a pretrial motion to quash waives the objection of misjoinder. See State v. Peters, 298 So.2d 276, 280 (La.1973) (on rehearing). There is no evidence in the record that the defendant in this case complied with La. C.Cr.P. art. 495. Absent a contemporaneous objection, the right to raise the issue was waived. La. C.Cr. P. art. 841. However, even if the issue were preserved for appellate review, there is no merit to the defendant’s argument.
La.C.Cr.P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided that the offenses joined must be triable by the same mode of trial.
La.C.Cr.P. art. 493.2 provides:
Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
The defendant maintains that the charges are not of the same or similar character, or a part of the same transaction or common scheme because Ms. Moffett’s ear was | üStolen the day before the armed robbery, and there were no intervening events to connect the two incidents.
In State v. Porche, 2001-2086 p. 7 (La.App. 4 Cir. 5/22/02), 819 So.2d 1122, 1127, this Court recently discussed the possibility of a defendant being prejudiced by the joinder of offenses:
Generally, “there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime.” State v. Carter, 99-2234 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 145, citing State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir.1990). The defendant has a heavy burden of proof when alleging prejudicial joinder of offenses, and he must make a clear showing of *562 prejudice. Id. In determining whether joinder of two or more offenses would result in prejudice, a court should consider: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Coston, 2000-1132 p. 9 (La.App. 4 Cir.9/5/01), 800 So.2d 907, 914.
In the instant case there is nothing to indicate that the jury was confused by both of these charges being part of the same trial. The use of Ms. Moffett’s automobile as the “get away car” in the armed robbery of the jewelry store constitutes one transaction. The time at which Ms. Moffett’s vehicle was reported stolen is irrelevant because Grainer was only charged with possession of a stolen automobile. Grainer used the stolen automobile for the purpose of facilitating the armed robbery, and that makes it an integral part of the crime. The defendant has failed to meet his burden of proof and he has not shown that he was prejudiced by the joinder of the offenses. Thus, we find no error in the trial court’s failure to sever the trial of the offenses.
^SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 2
By this assignment, Grainer argues his sixth amendment rights to confront and cross examine his accuser were violated when he was convicted on count three of robbing Fahim Akhtar at gunpoint when Akhtar did not appear and testify at trial.
 The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. This right provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination. State v. Welch, 99-1283 (La.4/11/00), 760 So.2d 317. The State does not dispute that the only reason Fahim Akhtar did not testify at trial was because he had relocated to Canada.[3]
Confrontation errors are subject to a harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 *563 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. at 684, 106 S.Ct. 1431. Factors to be Inconsidered by the reviewing court include “the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contracting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.” Id. at 684, 106 S.Ct. 1431; State v. Wille, 559 So.2d 1321, 1332 (La.1990). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
In this case, in order to obtain a conviction, the State was required to prove the taking of anything of value belonging to another from the person or control of another, by use of force or intimidation while armed with a dangerous weapon. La. R.S. 14:64. Three eyewitnesses/victims testified that Grainer came into the premises armed with a gun which he pointed at them and Fa,him Akhtar, while pushing Akhtar and the others into a back room of the jewelry store, where Baham held them hostage at gunpoint. Ms. Lynette Williamson, Mohammed Mohidudin and Sadiq “Sam” Hirani testified that everyone, including Akhtar, was forced to turnover anything of value they had on their person while being held at gunpoint in the store’s bathroom. All of the witnesses/victims were certain of recognizing Grainer and Baham, and positively identified Grainer’s clothing, mask and gun, which he brought into the store. Further, they testified that they were certain Grainer and Baham were acting in concert.
Grainer was in the courtroom during the entire trial and defense counsel vigorously cross-examined all the prosecution witnesses. There was no denial of Grainer’s right to confront witnesses against him or be present when they testified. h?, The evidence against Grainer presented by the State was more than sufficient to prove beyond a reasonable doubt that he and Baham robbed Sol’s Jewelry Store at gunpoint, that Akhtar was present during the robbery and was forced into a back room where the three testifying witnesses saw that he was made to surrender his personal property while held at gunpoint. Considering the overwhelming evidence of Grainer’s guilt, and considering that any testimony which would have been offered by Akhtar would only be cumulative to that of the other witnesses, the guilty verdict was unattributable to Akhtar’s nonappearance at trial to testify. This assignment is without merit.
PRO SE ASSIGNMENT OF ERROR NUMBER 1
By this assignment, the defendant claims the trial court erred in denying his motion to suppress his pre-trial statement. Grainer contends he steadfastly refused to make a statement and that he did so only after the police threatened him that he would not see his child again if he did not cooperate and confess.
Before a confession or inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. Miranda v. Arizona, 384 *564 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Thucos, 390 So.2d 1281 (La.1980). The Supreme Court in Miranda held that the person in custody-must be informed that he has a right to remain silent, that any statement he does make may be used against him as evidence, and that he has a right to the presence of an attorney, either retained or appointed. Miranda, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
| isThe trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. A trial judge’s decision to deny a motion to suppress will be afforded great weight and will not be set aside unless to do so is clearly mandated by a preponderance of the evidence. State v. Temple, 2001-1460 (La.App. 4 Cir. 6/19/02), 821 So.2d 738. In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at a suppression hearing, but may consider all pertinent evidence adduced at trial. Id. at 740.
At the motion to suppress and at trial, Detective Byron Adams testified that initially, when Grainer was arrested, he refused to make a statement. However, at some point in the evening, while Adams was completing his paperwork on the incident, he asked Grainer if he wished to make a statement, and Grainer said yes. Adams explained to Grainer the charges filed against him, advised him that he had the right to remain silent, the right to appointed or retained counsel during questioning and at trial, and that anything he said could be used against him at trial. Adams also advised Grainer that if he changed his mind at anytime about making a statement, Adams would stop the questioning. Grainer indicated to Adams that he understood his rights, and chose to waive them. The State introduced Grain-er’s written statement, which bore Grain-er’s initials on each page and signature at the end. After Adams transcribed Grain-er’s statement, he gave Grainer the opportunity to make corrections or deletions from the statement. Adams denied threatening, coercing or forcing Grainer to make the statement. Under cross-examination at trial, Grainer admitted that he made no complaint of threats during or after the statement. His first complaint of coercion was made at trial. The evidence supports a finding that Grainer’s statement was voluntarily made without 114eoercion or threats, and that the trial court ruled based on its impression from the testimony, which is within its sound discretion. For the reasons stated, this assignment of error is meritless.
PRO SE ASSIGNMENT OF ERROR NUMBER 2
In his second and third pro se assignments, Grainer complains he received ineffective assistance of counsel.
To support a claim of ineffective assistance of counsel, a defendant must show that counsel’s performance was deficient and that he was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 94-2438 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing). The defendant must prove both elements to establish that his attorney was so ineffective as to require reversal. State v. Hongo, 96-2060 (La.12/2/97), 706 So.2d 419, 422. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064.
To carry his burden of proof on this claim, a defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result *565 of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 693, 104 S.Ct. at 2068. However, if an alleged error results from a reasonable strategic decision, counsel’s performance will not be considered deficient on that basis. State v. Brooks, 505 So.2d 714, 724 (La.), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial 11Bcourt where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Hampton, 94-1943 (La.App. 4 Cir.12/27/96), 686 So.2d 1021, 1026. Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issue on appeal. State v. Seiss, 428 So.2d 444, 449 (La.1983).
Grainer’s first alleged instance of ineffective assistance of counsel relates to his counsel’s soliciting testimony from Detective Jason Gagliano concerning the confession given by Grainer’s non-testifying co-defendant. During cross-examination, defense counsel questioned Detective Gagli-ano:
Q. Did Mr. Baham make a statement to you, sir?
A. Yes, he did make a statement?
Q. After you read him his rights?
A. Yes, I did
Q. Did you know that he was acquitted on all charges but one? Are you aware of that?
Defense counsel’s questioning seems to have been a tactical ploy to make the jury aware that Grainer’s co-defendant received lenient treatment, hoping that the jury in Grainer’s case would afford him the same leniency.
A thorough review of the preliminary and trial transcripts reveals a zealous, relentless, and thorough defense presented by counsel on behalf of Grainer. In the face of a written confession and a positive identification of Grainer by the victims, it is worth noting that defense counsel was successful in preventing a verdict of guilty of four counts of armed robbery in this matter, and in convincing the jury that it should return a responsive verdict of four counts of attempted armed robbery instead. This part of the assignment is without merit.
lifiGrainer’s second complaint of ineffective assistance is counsel’s failure to object to the trial judge reading Grainer’s confession for the jury. Grainer maintains that the judge’s action constitutes impermissible “comment” on the evidence.
La.C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The no-judge-comment rule is designed to safeguard the role of the jury as the sole judge of the facts on the issue of guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974). Thus, if the effect of a comment is to permit a reasonable inference that it expresses or implies the judge’s opinion as to the defendant’s innocence or guilt, this constitutes a violation of the defendant’s statutory right to no-comment and thus requires reversal. State v. Green, 231 La. 1058, 93 So.2d 657 (1957). To constitute reversible error, however, the effect of the improper comment must be such as to have influenced *566 the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983).
In this case, the trial judge did not comment on Grainer’s guilt or innocence. He merely read Grainer’s statement to the jury. As he did so, the jurors followed along on copies supplied to each. When the judge finished reading the statement, trial testimony resumed without comment from the bench. The judge’s reading of the statement played no part in the verdict rendered. The evidence against Grainer overwhelmingly • determined his guilt. This assignment of error is without merit.
|17PRO se assignment of error NUMBER 4
In a final assignment, Grainer argues that the trial court erred in permitting victim Sadiq “Sam” Hirani to testify concerning statements allegedly made by Grainer without the State having previously disclosed the statements in discovery or by way of pretrial notice pursuant to La. C.Cr.P. art. 768. Grainer refers to Hira-ni’s direct testimony at trial that Grainer threatened Hirani’s life if Hirani told the police Grainer was one of the armed robbers. Grainer claims that the statement was inculpatory in the manner used because it raised an inference of a “future crime”.
The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042, 1044 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the State’s case against him in order to prepare his defense. State v. Roy, 496 So.2d 583, 590 (La.App. 1 Cir.1986). If a defendant is lulled into a misapprehension of the strength of the State’s case by the failure to fully disclose, such prejudice may constitute reversible error. State v. Ray, 423 So.2d 1116, 1118 (La.1982).
La.C.Cr.P. Art. 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
By its own terms, article 768 does not apply when a defendant has been granted pretrial discovery. In this case, Grainer was granted such discovery. Grainer argues that because he could not have known of the oral statement, he was prejudiced in his ability to prepare his case. However, he does not explain how or 11Rwhy he was prejudiced by not knowing of the existence of the oral statement, especially since he was aware of the written inculpatory statement. Nor does he suggest how his defense would have been different had he been apprised of the State’s intention to use the statement, nor does he show any prejudice from the State’s failure to provide notice. The purported threat did not relate to the charge upon which Grainer was being tried, but rather, as Grainer notes, a future crime. Hence, even assuming there was a technical failure to comply with La.C.Cr.P. art. 768, and that Grainer was not provided notice of the oral statement in pretrial discovery, reversal of the conviction is not appropriate. Even if the prosecution fails to provide the proper notice, the error may be harmless if the other evidence against defendant is overwhelming. State v. Jackson, 450 So.2d 621, 631 (La.1984). As previously noted, three victims/eyewitnesses unequivocally identified Grainer as one of the armed robbers, the jewelry store’s video security system documented *567 Grainer’s participation in the crime, and, just as importantly, Grainer confessed. If there was error, it was harmless in light of the overwhelming evidence of Grainer’s guilt.

CONCLUSION

For the foregoing reasons, we find that the trial court did not err in denying the defendant’s motion to suppress his pretrial statements. The defendant did not receive ineffective assistance of counsel.
Therefore, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Baham was convicted of one count of attempted robbery on June 16, 2001, and sentenced pursuant to La. R.S. 15:529.1 as a second offender to twenty-five years without benefit of parole, probation or suspension of sentence.

. Akhtar was a visitor to the store the day of the robbery. Subsequent to the robbery, he left the United States and did not testify at trial.

. Although a defendant's right to physical, face-to-face confrontation is guaranteed by the Sixth Amendment, the Supreme Court, in Maryland v. Craig, 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)), held that "our precedents establish that 'the Confrontation Clause reflects a preference for face-to-face confrontation at trial.’ ” The Court further stated that:
Thus, though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment’s guarantee of the right to confront one’s accusers.
Id. at 849-850, 110 S.Ct. at 3165-3166. This preference for physical, face-to-face confrontation "may be overcome in a particular case if close examination of 'competing interests' so warrants.” Coy v. Iowa, 487 U.S. 1012, 1024, 108 S.Ct. 2798, 2805, 101 L.Ed.2d 857 (1988). In White v. Illinois, 502 U.S. 346, 358, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992), the Court held that the confrontation clause is satisfied if hearsay "has sufficient guarantees of trustworthiness to come within a firmly rooted exception to the hearsay rule.” State v. Welch, 99-1283 (La.4/11/2000), 760 So.2d 317.