I MICHAEL E. KIRBY, Judge.
In this juvenile criminal proceeding in St. Bernard Parish, the defendant, C.P.[1], was charged with two counts of attempted first-degree murder, violations of La. R.S. 14:27(30), one count of aggravated battery, a violation of La. R.S. 14:34 and one count of aggravated criminal damage to property, a violation of La. R.S. 14:55. After trial, the trial court found defendant to be a delinquent as a result of having commit *727 ted the offense of one count of attempted first-degree murder.[2] The trial court ordered defendant committed to the Youth Services Division of the Department of Corrections until his 21st birthday. The court stipulated that it would review the sentence upon defendant’s completion of his GED and any other requirements established by the Youth Services Division of the Department of Corrections. The defendant now appeals.
Trial in this matter was held on June 4, 2002.[3] The defendant was tried along with three co-defendants, B.L., D.L. and R.N.[4] The State ultimately ^dismissed the charges against R.N., and B.L. and D.L. were found not guilty of the charges against them.
John Vaccarella testified that on April 6, 2002, he and a friend, John Heidel, went to Val Riess Park in Chalmette to check on Vaccarella’s brother, Dominick, after hearing reports that Dominick had gone to the park to fight with a group of Asian-Ameri-ean males. According to Vaccarella’s testimony, there were 50 to 60 Asian-Ameriean males at the park when he arrived. He said that the crowd surrounded his car and hit the car with baseball bats and golf clubs. He and Heidel were each hit in the face with baseball bats as they tried to get out of the car. As Vaccarella began to drive away, someone in the crowd fired gunshots into his car, shattering the back windshield and one of the passenger windows, and leaving bullet holes in the front windshield. At trial, Mr. Vaccarella identified the defendant as the person who fired shots at him. He said someone else in the crowd shot at Heidel.[5]
Mr. Vaccarella testified that he spoke to two officers after the shooting, but he did not speak with Detective Jackson until a few days later. He said he did not tell the officers he spoke to on the date of the shooting the names of the perpetrators. He explained that he could not tell them the names because he was shaken up from the incident. He later said he could not recall if he gave the perpetrators’ names to the officers. He said he never told Detective Jackson that the defendant was the person who shot at him because he did not know defendant’s name. He said defendant was not the person that hit him with a baseball bat.
Mr. Vaccarella stated that after the incident, his face was swollen and “gushing blood,” but he did not seek medical treatment. He said the police officer |sthat interviewed him the night of the incident advised him to seek medical treatment.
Lisa Vaccarella, John Vaccarella’s mother, testified that on the night of the incident, her son’s head was bleeding but he wiped off the blood before the police arrived. She also said that Detective Jackson and other detectives came to her home on the night of the incident. Detective Jackson took a statement from John.
The next witness was Detective Darren Hope of the St. Bernard Parish Sheriffs *728 Department. He testified that he participated in the investigation of the April 6, 2002 shooting at Val Riess Park by interviewing R.N., one of the co-defendants in this case, approximately three days after the shooting. R.N. did not testify at trial. Detective Hope testified that R.N. indicated to him that he was present when the shooting occurred, and that he saw who did the shooting. He said R.N. did not tell him that he participated in any criminal activity at the park. R.N. showed Detective Hope where the shooter lived, and he pointed out someone walking out of that house as the shooter. R.N. did not know the shooter’s real name; he knew only a nickname. Detective Hope was unable to identify defendant in court as the person pointed out to him earlier by R.N.
Detective Mark Jackson was the next witness. He testified that he was the primary case officer in the investigation of the April 6, 2002 shooting at Val Riess Park. He stated that he went to Mr. Vac-carella’s residence that night at approximately 10:30 p.m. He spoke to Mr. Vaccar-ella, and Mr. Vaccarella gave him the names of the perpetrators. Detective Jackson said that Mr. Vaccarella looked nervous and frightened, but had no signs of physical injury. Detective Jackson arrived at the Vaccarella residence approximately one and one-half hours after the shooting incident. Detective Jackson arrested the suspects named by Mr. UVaccarella, but the defendant’s name was not included in that group. Detective Hope advised Detective Jackson that R.N. volunteered to show them where the shooter lived. Detectives Hope and Jackson and two other detectives accompanied R.N. to the house in question, and R.N. identified the defendant as the shooter as he exited the house. The defendant was then arrested. He did not give a statement, and a search of his home revealed no weapon or other evidence linking him to the shooting.
Detective Jackson testified that Mr. Vaccarella told him in his second interview that the defendant was the person that hit him with the baseball bat. In his investigation, Detective Jackson determined that one of the young men named by Mr. Vac-carella as being at the park on the night in question was not there because a police report established that he was involved in a car accident at a different location at the time of the shooting incident. Detective Jackson stated that he had no other evidence linking defendant to the shooting other than the statement from R.N. He said that Mr. Vaccarella consistently maintained to him throughout the investigation that he did not see who fired the shots at him.
On appeal, the defendant argues that the trial court erred in finding that the State proved beyond a reasonable doubt that the defendant was the perpetrator of the attempted murder of John Vaccarella. Defendant also argues that the trial court committed reversible error by allowing inadmissible hearsay evidence regarding a co-defendant’s out-of-court statements naming defendant as the person that shot at Mr. Vaccarella on the evening of April 6, 2002.
Following trial, the trial court made the following statement before ruling that the State had proven beyond a reasonable doubt that the defendant was the perpetrator of the attempted first-degree murder of Mr. Vaccarella:
|fi“I guess as pointed out, and as the Court has stated there are certain things that the Court is firmly convinced of. One, is that shots were fired, damage was done to the vehicle, and two parties were inside the vehicle when that was done. As to other things the Court is not as sure of, but one thing I am, and *729 the Court is convinced that Mr. Vaccar-ella did receive trauma to his head on the night of this, and that he was in somewhat of a confused state when questioned originally by Detective Jackson. And if the only evidence as to [defendant] were the statement alone of Mr. Vaccarella, the Court may not be as certain that proof beyond a reasonable doubt has been established, however, that was not the only evidence as to [defendant.] The evidence, the statement of the codefendant also established him at the location with the weapon, firing at the weapon.”
Other than the testimony of Mr. Vaccar-ella, which the trial court found was not enough to establish proof beyond a reasonable doubt that defendant fired shots at Mr. Vaccarella, the only other evidence offered to establish that defendant was the shooter was the out-of-court statements of the co-defendant, R.N. that were offered during the testimony of Detectives Hope and Jackson.
Louisiana Code of Evidence Article 804 provides certain exceptions, where the declarant is unavailable, to the general rule against the admissibility of hearsay statements. State v. Manson, 2001-0159, p. 10 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 757-758. A declarant is “unavailable as a witness” when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. La. C.E. art. 804(A). R.N. was a co-defendant in this trial, and chose not to testify. Therefore, he is considered “unavailable as a witness” under the Code of Evidence. In allowing R.N.’s statements to the police officers into evidence, the trial court stated that it was finding the statements admissible because they were made against the interest of R.N. in that they placed him at the scene of the crime.
|fiOne of the exceptions to the hearsay rule if the declarant is unavailable as a witness is if the statement is a statement against interest. La. C.E. art. 804(B)(3) defines a statement against interest as:
“A statement which was at the time of its making [is] so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.”
R.N.’s out-of-court statements were not offered to exculpate the defendant, so the second sentence of La. C.E. art. 804(B)(3) is not applicable. The fact that R.N.’s statements placed him at the scene of the crime does not make his statements against his own interest, given the fact that there is no evidence in the record that R.N. told police that he participated in any criminal activity. R.N.’s admission that he was present in the park when shots were fired was not enough to subject him to criminal liability. See, State v. Haynes, 99-1973 (La.App. 1 Cir. 6/23/00), 762 So.2d 1247. Therefore, his out-of-court statements were not statements against interest, and did not fall within this exception to the general rule against the admissibility of hearsay statements. The trial court erred in allowing these hearsay statements into evidence.
The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses *730 against him. State v. Grainer, 2002-0703, p. 10 (La.App. 4 Cir. 12/4/02), 834 So.2d 555, 562. Confrontation errors are subject to a harmless error analysis. Id. Factors to be considered by the reviewing |7court include the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contracting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution’s case. Id., citing Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
According to the trial court’s own statement at the conclusion of trial, R.N.’s out-of-court statements were the only evidence establishing defendant as the person that fired shots at Mr. Vaccarella, other than the testimony of Mr. Vaccarella, which was not enough alone to establish proof beyond a reasonable doubt. Because there was no other credible evidence of defendant’s guilt, R.N.’s out-of-court statements identifying defendant as the shooter were not cumulative. Therefore, the admission of these statements was not harmless error.
For the reasons stated above, the defendant’s conviction is reversed and this matter is remanded to the trial court for a new trial.
REVERSED AND REMANDED.

. Because the defendant is a juvenile, we will refer to him only by his initials, C.P.

. At the end of trial, the trial court stated that it was finding defendant guilty of attempted first-degree murder, aggravated criminal damage to property and rioting. However, at the sentencing hearing, the trial court only stated that it was finding defendant guilty of attempted first-degree murder and sentenced defendant only on that charge.

. A minute entry indicates that pretrial motions were heard on May 22, 2002, and defense counsel makes numerous references to the transcript of the hearing. However, we are not able to review that transcript because it is not included in the appeal record.

. We will also refer to the co-defendants by their initials because of their juvenile status.

. Mr. Heidel did not testify at trial.