875 So.2d 853 (2004)
STATE of Louisiana
v.
Vertis L. ALEXANDER.
No. 2003-KA-2072.
Court of Appeal of Louisiana, Fourth Circuit.
May 19, 2004.
*855 Eddie J. Jordan, Jr., District Attorney, Claire Adriana White, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Frank G. Desalvo, Frank G. Desalvo, A.P.L.C., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY III and Judge DENNIS R. BAGNERIS SR.).
JOAN BERNARD ARMSTRONG, Chief Judge.

STATEMENT OF THE CASE
Vertis L. Alexander, defendant[1] herein, was charged by Bill of Information on August 17, 1999 with distribution of crack cocaine on April 29, 1999 and on April 19, 1999. Distribution of crack cocaine is a violation of LSA-R.S. 40:967 A(1).
On appeal, the defendant argues that the trial court improperly tried him on two separate bills of information[2] on the same day in the same trial; that he was denied a speedy trial; that his trial counsel was ineffective and that the trial court improperly forced the trial counsel to submit to an untimely trial.[3]
The defendant's arraignment was set for August 26, 1999. On that day, he appeared for arraignment with co-defendant Sansom and counsel Robert Oberfell and David Craig and entered a plea of not guilty. Counsel for the defendants filed an application for a bill of particulars, motions for discovery and inspection, to suppress evidence, to suppress confession and identification, for preliminary hearing and for speedy trial. The defendant's motions were set for hearing on September 20, 1999 and trial was set for October 25, 1999. On September 20, 1999, the motions were reset for October 13, 1999. On that date, the defense and the state jointly moved for and were granted a continuance of the motion hearing to October 25, 1999, when the hearing was reset for December 2, 1999 and the trial was reset for January 10, 2000. Defense counsel, Mr. Oberfell, having died, the Court set a status hearing for December 8, 1999 to determine that Gary Wainwright would serve as trial counsel, and motions were set for January 10, 2000. Hearings to determine defendant's counsel were continued on December 8 and December 15, with Mr. Wainwright's having been notified of each setting. On January 13, 2000, the court reset all motions, and on May 26, 2000, the court set a status hearing for June 21, 2000. On that day, the court set the motion hearing for July 27, 2000. Status hearings were set and continued in July. On July 27, 2000 the court granted *856 the defense request to continue the motion hearing as to the defendant and Messrs. Poole and Sansom to August 18, 2000, when the hearing was reset for September 18, 2000. On October 31, 2000 a status hearing was set for November 3, 2000, when the court set another status hearing for November 28, 2000. At that hearing, the court set the matter for trial on January 16, 2001. On January 16, 2001, Messrs. Sansom and Poole pled guilty to a lesser charge and received suspended sentences and probation. The defendant appeared and pled guilty as charged under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) and was remanded for sentencing on March 2, 2001. The court reset sentencing for April 3, 2001[4]. At that time, according to the trial court's minute entry, defendant's counsel moved to withdraw the guilty plea, and the court granted the motion, set pre-trial motions for hearing on May 15, 2001 and set trial for May 28, 2001. The trial court minute entry shows that defendant's sentencing was set erroneously, whereupon the defense motions were reset for August 17, 2001, when the court granted a continuance and reset the motion hearing for September 25, 2001. On that date, the motion hearing and trial were reset for October 26, 2001, when the motions and trial were reset for December 14, 2001.
The next minute entry relating to the defendant bears the date March 11, 2002, when hearing was set for March 15, 2002. On that date, defendant's trial was set for March 19, 2002. On March 18, 2002, defense counsel filed a motion to quash, which the trial court denied, setting the trial for March 26, 2002.[5] On that date, defense counsel filed a motion to recuse the district attorney's office, which the trial court denied. Mr. Wainwright also filed a motion to re-instate previously waived motions. According to the latter motion, because the State failed to produce its witness, Detective Adam Henry, for nearly two years, the defendant waived motions and requested that the matter be set for trial "in an effort to bring this matter to some sort of closure." The motion alleged that the State was not forced to trial, and has now found the witness, whereupon the defendant re-urged his original motion for preliminary hearing in order that his counsel might evaluate the strength of the State's case. The next day the defendant appeared with Mr. Wainwright as counsel for trial.
The defendant, having waived his right to trial by jury, was tried by the court on both charges on March 27, 2002. The trial court found the defendant guilty on two counts. On April 23, 2002, Mr. Wainwright filed a motion for new trial, alleging that the verdict did not conform to the evidence.
On August 22, 2002, this Court granted defendant's application for supervisory *857 writ, transferring his request for a writ of habeas corpus to the district court, and ordering the district court to furnish a copy of its minute entry showing that the defendant had been sentenced. Sentencing was continued and on September 13, 2002, the matter was set for status hearing on September 13, 2002, with the minute entry indicating that defendant's attorney was Mr. Frank deSalvo. On October 3, 2002, Mr. deSalvo appeared without the defendant for a status hearing which the trial court reset "due to an Act of God." On October 8, 2002, the defendant appeared without counsel for a multiple bill hearing. The trial court set sentencing for October 24, 2002 for the defense. On October 15, 2002, the defendant again appeared without counsel, and the October 24, 2002 sentencing date was again noted on the minute entry. On October 24, 2002, the court granted the defense request to reset sentencing. On October 29, 2002, the defendant appeared with counsel and on defense motion sentencing was reset to October 31, 2002. On that date, the defense withdrew its motion for a speedy sentencing and filed a motion for new trial, which was set for January 15, 2003. On that date, defense counsel moved for and was granted a continuance of the hearing on his motion for new trial to March 13, 2003. On that date, the defendant appeared without counsel, and the hearing on the motion for new trial was continued on defense motion to March 14, 2003. On that date, the trial court sentenced the defendant on both counts to five years at hard labor with credit for time served. Defense counsel then withdrew all his post-trial motions.
On July 16, 2003, this Court granted in part the defendant's application for supervisory writ, noting that on March 14, 2003, the district court granted the defendant an appeal bond, but that the record did not reflect whether an appeal was granted.
The trial court's minute entries show that the defendant appeared without counsel for status hearings on September 5, 8, and 11 and on November 4, 2003.

STATEMENT OF FACTS
Detective Adam R. Henry testified that in April 1999 he was in the Major Case Narcotics Section of the New Orleans Police Department (NOPD), engaged in an undercover drug investigation. He was assigned to purchase narcotics from the defendant through co-defendant Larry Poole. The defendant was the focus of the NOPD investigation. A confidential informant made arrangements to introduce Detective Henry to Mr. Poole, who would then take the detective to the defendant, from whom the detective would purchase narcotics. The detective made several recorded contacts with Mr. Poole, during the course of which Mr. Poole referred to the defendant as the person who would provide the drugs. Detective Adams drove Mr. Poole to the defendant's apartment. Mr. Poole went upstairs, knocked on the defendant's door and the defendant came to the door. After a brief conversation with the defendant, Mr. Poole came downstairs and informed the detective that the defendant had the drugs. Mr. Poole took $250 from the detective and went back to the apartment, met the defendant who went back into the apartment and came outside. Mr. Poole and the defendant stood on the stair landing and exchanged the money for the crack cocaine. Mr. Poole put the cocaine into his mouth, came to the car, and gave the detective approximately a quarter ounce of crack cocaine in about five pieces. The detective paid Mr. Poole $30 for having set up the drug deal. The detective had obtained $280 from NOPD City Funds to make the drug purchase.
Several days later, he met Mr. Poole and returned to the parking lot adjacent to *858 the defendant's apartment. In another hand-to-hand transaction, Mr. Poole exchanged $500 of the detective's money with the defendant for a half-ounce of crack cocaine.
Detective Wayne Jacque of the NOPD Major Narcotics Section testified that he participated in the investigation that implicated the defendant, and made an in-court identification of Mr. Alexander. On April 29, 1999, Detective Jacque was assigned to conduct surveillance of the undercover purchase of narcotics by Detective Henry and Mr. Poole from the defendant. He positioned his car in the 1100 block of Carondelet Street where he had a clear view of the defendant's apartment at 1132 Carondelet Street. He saw Detective Henry arrive in his undercover car, and saw Mr. Poole exit the car, climb the steps of the apartment house and knock on the defendant's door. The defendant opened the door, engaged in conversation with Mr. Poole, and entered the apartment with Mr. Poole. Seconds later, the defendant left the apartment and walked to an area not visible to the detective. Seconds later, the defendant reemerged and reentered his apartment. About a minute later, Mr. Poole left the apartment and descended the stairs to the ground level. The defendant, standing in his doorway, engaged in conversation with Mr. Poole, at the end of which Mr. Poole reentered the detective's car and they departed. On cross-examination, Detective Jacque testified that he did not see the defendant stand in the gateway and engage in a hand-to-hand transaction with Mr. Poole.
Mr. Poole testified that he had tried to arrange meetings for the purchase of narcotics from 1132 Carondelet Street. He denied having referred to the defendant as his "uptown source" for drugs. He initially denied having handed the defendant $250 to purchase drugs, and testified that he went to the defendant's apartment after having been picked up in a car from his own home in eastern New Orleans in order to find where he could obtain drugs for himself. He then testified, "I'mokay, all right, all right, I'm going to tell you the truth." After having been reminded by the trial judge that he was under oath, Mr. Poole admitted that he gave $250 to the defendant and bought some "rocks" (crack cocaine) from the defendant. Mr. Poole testified, "I bought some rocks from him. I'm sorry, man."
Mr. Poole testified that a week or so later, the unidentified driver reestablished contact with him to buy more drugs, but denied having received as much as $500 to make the purchase. He was unable to identify Detective Adams as the driver of the car who provided him with the funds to purchase drugs.
At the conclusion of the testimony, the trial judge opined, "Mr. Alexander, I listened to the evidence and I listened to Mr. Poole's testimony. And I think Mr. Poole was scared and I think he started out telling a lie and wound up telling the truth out of fear."
James Bindon, the defendant's neighbor in the apartment complex located at 1132 Carondelet Street, testified for the defense. He identified photographs of the complex including the defendant's doorway and hallways. According to Mr. Bindon, someone named Tony, now deceased, had been selling drugs in the second floor hallway of the complex. He had not seen the defendant selling drugs at the complex, and had not noticed a lot of traffic in and out of the defendant's home. When asked how long Tony had been selling drugs at the complex, Mr. Bindon replied, "Not that long." Mr. Bindon denied having sold drugs, but admitted that he permitted Tony to sell drugs in his hallway.
*859 On cross-examination, Mr. Bindon admitted that he could not see the defendant's door from his apartment.
The defendant testified and denied having received money from Larry Poole on April 19 or April 29, 1999 for cocaine. According to the defendant, "Tony", a well-liked young student, was dealing drugs in the hallway of the defendant's building. The defendant testified that he witnessed the aftermath of Tony's murder, and testified for the State in the ensuing homicide trial.
The defendant testified to prior convictions: selling two grams of crack cocaine to an undercover officer in around 1980; possession of two marijuana cigarettes; and simple possession of cocaine.
The defendant claimed to have given off-track betting slips to his former, now-deceased, attorney that proved he was at a betting parlor on Bourbon Street at the time of the two drug transactions with which he was charged.
The parties stipulated to the Crime Lab Report concluding that the material seized tested positive for crack cocaine.
The trial court concluded at the close of testimony that, based on Mr. Poole's testimony, the defendant was guilty as charged on both counts of distribution of crack cocaine.

REVIEW FOR ERRORS PATENT
A review of the record for errors patent reveals that although the defendant was convicted of two counts of distribution of cocaine, the trial court imposed only one sentence, five years, as applicable to both counts. The case should be remanded for imposition of a determinant sentence on each count of conviction.
Furthermore, La. R.S. 40:967(B)(4)(b), as it existed at the time the offense was committed, required that the first five years of the sentence be imposed without benefit of probation, parole, or suspension of sentence. On remand, the defendant's sentence should be applied in conformity with the provisions La. R.S. 40:967(B)(4)(b).
FIRST ASSIGNMENT OF ERROR: The trial court erred in trying the defendant on two separate bills of information on the same day in the same trial.
The defendant argues in brief that trial counsel was ineffective for having failed to move to quash or sever[6] the "bills" of information, and that the trial court abused its discretion.
There is no basis for the assertion of abuse of discretion since the defendant had not moved to quash or sever; hence, the trial court had nothing to decide. Having no motion before it, the trial court did not exercise, much less abuse, its discretion.
Two or more offenses may be charged in the same bill of information in a separate count for each offense if the offenses charged are of the same or similar character, provided that the offenses joined must be triable by the same mode of trial. LSA-C.Cr.P. art. 493. Offenses in which punishment is necessarily confinement at hard labor may be charged in the same information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character. LSA-C.Cr.P. art. 493.2. Objections of misjoinder of offenses may be urged only by a motion to quash the indictment or information. See, LSA-C.Cr.P. art. 495. If not *860 argued prior to trial, the misjoinder issue is not preserved for appeal. The defendant cannot argue misjoinder of offenses as reversible error. LSA-C.Cr.P. art. 841; State v. Grainer, XXXX-XXXX, p. 7 (La.App. 4 Cir. 12/4/02), 834 So.2d 555, 560, writ denied, XXXX-XXXX (La.10/10/03), 855 So.2d 325. Only when it appears that a defendant or the state is prejudiced by a joinder of offenses or by such joinder for trial together, may the court order separate trials, grant a severance of offenses, or provide whatever other relief justice requires. LSA-C.Cr.P. art. 495.1.
The defendant was charged in a single bill of information with the same type of offense, distribution of crack cocaine, occurring on two separate occasions only ten days apart. The defendant has not shown that the joint trial of these offenses would tend to confuse the jurors or created such prejudice as would qualify the instant case for the discretionary severance provided for in the Code of Criminal Procedure.
The issue of ineffective assistance of counsel is properly raised in an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729, 737 (La.1984). However, where the record on appeal discloses sufficient evidence on which to make a determination of counsel's effectiveness, a decision on appeal may be made in the interest of judicial economy. State v. Seiss, 428 So.2d 444, 448-449 (La.1983).
In order to establish his counsel's ineffectiveness, the burden is on the defendant to demonstrate both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Our scrutiny of defense counsel's performance must be deferential, and every effort must be made to eliminate the distorting effects of hindsight. Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065. Prejudice is established by a showing that there is a reasonable probability that but for defense counsel's errors, the defendant would have been acquitted. Id.
There is no merit to the defendant's assertion that trial counsel's failure to move to quash or sever the "bills" of information rendered him ineffective. Absent a showing of prejudice, it cannot be said that the trial counsel was ineffective for having failed to raise the issue of the propriety of a single trial on the offenses charged in the bill of information.
This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR: The defendant was denied a speedy trial.
The record contains a copy of a memorandum in support of motion to quash that does not bear a stamp showing the date it was filed. Furthermore, there is no certificate of service on opposing counsel and the show cause order relating to the motion is not dated or signed by the trial court. Nonetheless, the trial court's minute entry notes that a motion to quash was heard and denied on March 18, 2002. There being no evidence of another motion to quash, we infer from the record that the motion to quash contained in the record and the motion to quash that was heard and denied on March 18, 2002 are one and the same.
The motion to quash is the only record documentation of the defendant's claim that the State violated his constitutional right to a speedy trial, as there is no motion for speedy trial in the record.
The right to a speedy trial is guaranteed by both the federal and state constitutions. U.S. Const. Amendment 6; La. Const. Art. 1 § 16. In evaluating a claim for violation of this constitutional *861 right, we use a four-part test, examining the length of the delay in bringing the defendant to trial; the reason(s) for the delay; the defendant's assertion of his right to a speedy trial; and prejudice to the defendant caused by the delay. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191-2192, 33 L.Ed.2d 101 (1972); State v. Alfred, 337 So.2d 1049, 1054 (La. 1976). Joint and defense motions to continue, as well as other pretrial defense motions, suspend the time limitations. State v. Brock, 1999-2128, p. 2 (La.App. 4 Cir. 6/14/00), 767 So.2d 130, 131.
The standard of review of a trial court's decision on a defense motion asserting the right to speedy trial is clear abuse of discretion. State v. Love, XXXX-XXXX, pp. 11-12 (La.5/23/03), 847 So.2d 1198, 1208.
Generally, the State has no less than one year after the filing of a defense motion to quash or other preliminary plea in which to commence trial. LSA-C.Cr.P. art. 580; State v. Watkins, 594 So.2d 501, 503 (La.App. 5 Cir.1992). LSA-C.Cr.P. art. 578(2) requires commencement of trial within two years of August 17, 1999, when the State instituted prosecution.
According to the record, the defense requested and was granted a continuance on October 13, 1999. After the defense counsel's death, Mr. Wainwright was recognized as counsel and a status hearing was set for December 8, 1999, thus upsetting the January 10, 2000 trial date through no fault of the State or the trial court. Mr. Wainwright was notified of the status hearings of December 8 and 15. On July 27, 2000, the trial court granted the defense request to continue a previously set motion hearing.
On March 2, 2001, the defendant pled guilty as charged, relieving the State of its obligation to bring him to trial. When the court allowed the defendant to withdraw that plea on April 3, 2001, LSA-C.Cr.P. art. 580 applied requiring the state to bring him to trial within one year. At that time, the trial court set the matter for trial on May 28, 2001. When the defendant moved on September 25, 2001 to continue the trial, that period was suspended.
While the delay between the filing of the original bill of information and the defendant's trial was significant, that delay was the result of some factors beyond the control of either the defendant or the State, such as the death of original defense counsel and the retention of new counsel, as well as delays initiated by the defense through requests for continuances and withdrawal of his original plea and the collapse of the plea bargain agreement negotiations. The legal time period had not expired when the defendant filed his motion to quash based on denial of his right to a speedy trial.
We find nothing in the record to support a conclusion that the defendant was prejudiced by the delay. His witnesses were available and did, in fact, testify. The claim that trial counsel was forced to go to trial without sufficient preparation is not supported by the facts of record. In order to show prejudice sufficient to justify a finding of violation of the right to a speedy trial, the defendant must show that the delay caused oppressive pretrial incarceration, anxiety and concern, or the possibility that his defense was impaired. See, Barker, supra, 407 U.S. at 532, 92 S.Ct. at 2193. The Supreme Court noted that the most significant of these three interests is the impairment of the defense. Id. See also, State v. Alfred, supra, 337 So.2d at 1058 (La.1976), noting that impairment of the defense occurs principally by the death of disappearance of defense witnesses during the delay.
*862 Based on the facts of record and the course of these proceedings, we are unable to find that the defendant's right to a speedy trial was denied. This assignment of error is without merit.
THIRD ASSIGNMENT OF ERROR: Trial counsel was ineffective.
The defendant contends that his trial counsel was ineffective in three respects: (1) waiver of jury trial; (2) failure to move to sever the two charges; and (3) failure to prepare adequately for trial.
Based on the record taken as a whole, and applying the Strickland test outlined in the discussion of the defendant's first assignment of error, we do not find that the defendant has demonstrated that the trial strategy manifested in the decision to waive his right to trial by jury supports a finding that trial counsel was ineffective. The fact that a particular strategy is unsuccessful does not equate to professional incompetence. State v. Taylor, XXXX-XXXX (La.1/14/03), 838 So.2d 729, 751, citing Strickland v. Washington, supra, and State v. Felde, 422 So.2d 370, 393 (La.1982). Clearly, counsel's trial strategy was to introduce the defendant's testimony at trial in an attempt to raise reasonable doubt as to whether it was the defendant or "Tony" who sold the crack cocaine to Detective Adams. The defendant, a convicted drug felon, would not be an attractive witness before a jury; however, it is reasonable to believe that an experienced trial judge would be less inclined to be prejudiced against such a defendant, and would be more inclined to give him the benefit of his cooperation in the trial of Tony's killer.
Under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, supra, a reviewing court must reverse a conviction if the defendant establishes (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect.
The various colloquies between Mr. Wainwright and the trial court cited by the defendant in brief do not indicate such malice or animus as would require a reasonable attorney to abandon his trial strategy and reinstate the request for a jury trial. In hindsight, trial counsel claimed in his motion for new trial that the waiver was ill advised. However, this does not satisfy the first prong of the Strickland test. Furthermore, the record does not support a finding of prejudice such that the trial was rendered unfair and the verdict suspect. The record demonstrates the trial court's even-handed, judicious demeanor, and prejudice is absent.
The second allegation was found to be without merit in our discussion of the defendant's first assignment of error. The third allegation is not briefed and is considered abandoned. Rule 2-12.4, Uniform RulesCourts of Appeal.
This assignment of error is without merit.
FOURTH ASSIGNMENT OF ERROR: The trial court erred in having forced defendant's trial counsel to submit to an untimely trial.
This assignment of error was not briefed and is deemed to have been abandoned. Rule 2-12.4, Uniform Rules Courts of Appeal.

CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed. The sentence is vacated and the case is remanded for imposition of a determinate sentence on each count.
*863 CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] The defendant was charged with three co-defendants, Willie T. Johnson, Larry Poole and Kendrick P. Sansom.
[2] A careful reading of the record shows that the State filed a single Bill of Information on August 17, 1999, charging six counts. Counts 2 and 3 relate to the defendant, Vertis L. Alexander.
[3] This last argument was not briefed and is considered to have been abandoned. Rule 2-12.4, Uniform Rules-Courts of Appeal.
[4] According to defense motion to recuse the District Attorney's office, the defendant contends that he was a witness in the homicide case, State v. Coleman. Prior to the Coleman trial, the defendant was offered and accepted a plea bargain that was approved by the trial court. Subsequently, the trial court set aside the plea allegedly over the defendant's objection, although Mr. Wainwright alleged in his recusal motion that he had objected to the withdrawal of defendant's plea. The State then allegedly took the position that the plea bargain would taint the Coleman conviction, since it could be inferred from the plea bargain that the defendant's testimony in the Coleman case had been purchased by the State.
[5] Mr. Wainwright alleged in his motion to continue the trial that both he and the assistant district attorney had calendared the trial for April 23, 2002. That date is not reflected in the trial court's minutes.
[6] Since the two counts were charged in a single bill, a motion to sever the "bills" would not lie.