JOAN BERNARD ARMSTRONG,
 

 Chief Judge.
 

 J¿STATEMENT OF THE CASE
 

 The defendant, Stanley LeBlanc, was charged by bill of information on October 10, 2007, with one count of theft of copper telephone cable, valued in the amount of five hundred dollars or more, a violation of La. R.S. 14:67(B)(1).
 
 [1]
 
 The defendant pleaded not guilty at his November 26, 2007 arraignment. The trial court denied the defendant’s motions to suppress the evidence and statement on December 14, 2007, At a Daubert
 
 [2]
 
 hearing on July 2, 2008, the trial court found valid the method used to value the copper cable. On October 1, 2008, the trial court denied the defendant’s motion to quash and a motion to bar the State’s use of certain photographs at trial. This Court denied the defendant’s writ application as to the part of the ruling concerning the photographs on November 7, 2008, and as to the motion to quash on April 20, 2009.
 
 [3]
 
 On February 10, 2009, after a lunacy ^hearing, the trial court found the defendant incompetent. The next lunacy hearing was on July 7, 2009, when the trial court again found the defendant not competent to proceed. The defendant likewise was found incompetent at an October 27, 2009 lunacy hearing.
 
 *576
 
 The defendant was declared competent to proceed on December 3, 2009.
 

 On December 14, 2009, the defendant filed a motion alleging a conflict of interest/ineffective assistance of counsel, a motion to suppress the evidence, and a writ of habeas corpus, all of which were denied; the defendant also filed that same date a motion for discovery of evidence, which the trial court granted. The defendant sought review of the denials of his motions and, on January 4, 2010, this Court denied the writ.
 
 [4]
 
 On January 5, 2010, the defendant filed a writ application with this court regarding his complaints of ineffective assistance of counsel, which this court denied on January 11, 2010.
 
 [5]
 
 On January 6, 2010, the day of trial, the trial court denied the defendant’s oral motion to suppress all evidence allegedly seized illegally and the defendant’s motion for written/verbal statement(s) and physical evidence. The defendant elected a trial by a six-person jury and was found guilty as charged.
 

 The defendant filed a writ application with this court on January 27, 2010, seeking discovery and inspection of virtually the entire record, including some items the docket master did not show were admitted. This Court denied the writ on |sFebruary 3. 2010.
 
 [6]
 
 On February 18, 2010, the trial court granted in part and denied in part defendant’s request for production of documents. On March 31, 2010, defendant filed a writ application with this Court complaining that the trial court had erred in denying his motion for production of the bill of information and his medical reports from the forensic mental hospital. This Court denied that writ application.
 
 [7]
 

 The trial court denied the defendant’s motions for new trial and for judgment notwithstanding the verdict on April 13, 2010; defense counsel announced the defendant was ready for sentencing, and the trial court sentenced the defendant to nine years at hard labor, to run concurrently with any other sentence he was currently serving. On that same date the defendant filed a motion for appeal, which the trial court granted.
 

 The record was lodged with this court on October 20, 2010, and was supplemented on November 4, 2010, with a copy of the
 
 Daubert
 
 hearing. The defendant filed a counseled brief on November 15, 2010, a counseled reply brief on December 2, 2010, and a pro se brief on May 10, 2011. The State filed its appellee brief on November 23, 2010.
 

 FACTS
 

 The defendant was charged with and convicted of the theft of copper cable valued at more than five hundred dollars, belonging to AT
 
 &
 
 T.
 

 14 Kenneth Kararick testified that on August 1, 2007, he was employed by AT
 
 &
 
 T as a facility technician; he repaired aerial cables and buried telephone cables. That day Kararick was working on Haynes Boulevard, where AT
 
 &
 
 T contractors were
 
 *577
 
 taking down telephone cable that had been unserviceable since Hurricane Katrina. Kararick testified that he observed two individuals rolling cable across the street and attempting to load it onto the top and trunk of a Volvo. Kararick exited his bucket truck to write down their license plate number, and when he reentered his truck one of them approached him and directed his attention to the defendant, saying “Well, what about this guy.” Ka-rarick then observed the defendant drive past in an old U-Haul truck with its bed full of AT
 
 &
 
 T telephone cable. Kararick said he recognized terminals attached to the cable, noting that he had been working with that cable for over thirty years.
 

 Kararick telephoned 911 and began following the defendant in his bucket truck. Kararick stopped his pursuit when defendant drove into a subdivision. Shortly thereafter, police telephoned him and directed him to a location where officers had stopped the defendant in his truck. Ka-rarick said it was the same truck he had seen and followed, and that the defendant was the same individual he had seen driving it. And someone he recalled as a Mr. Boutan (the defendant’s co-defendant) was also in the truck. The cable was clearly visible in the rear of the truck.
 

 Kararick identified a photograph of the telephone cable which he and another AT & T employee had removed from the defendant’s truck and placed in the back of his supervisor’s truck. Kararick recalled that he had called his supervisor, Chad Clark, when he had encountered the other two men rolling cable across the street. Kararick called Clark again to update him on where he was and [¿what the situation was with regard to defendant; Clark came to the scene within five or ten minutes. Clark called another employee to assist Kararick in loading the cable from back of the defendant’s truck into the back of Clark’s truck, which task Kararick estimated took forty minutes.
 

 When questioned on cross examination by the defendant (the defendant acted as his own counsel) about how he could have seen the cable in the defendant’s truck, Kararick testified that he was in his bucket truck when he observed the defendant drive by. Kararick was asked whether he had seen the defendant remove the wire from the pole, and he replied in the negative.
 

 New Orleans Police Officer Jason Cross confirmed that he responded to a theft call on August 1, 2007. The description was two unknown males in a U-Haul truck with copper wire in the back. Another officer stopped the truck. Officer Cross identified the defendant as being one of the men in the truck. Officer Cross informed the defendant and his accomplice, Don Boutan, of their Miranda
 
 [8]
 
 rights, and informed them that they were being questioned about the copper wire in the back of their U-Haul truck. Officer Cross asked the defendant about the wire. The defendant stated that a guy who worked for AT & T told him that if he helped him unload the copper wire he could have some. Officer Cross said when Kararick arrived on the scene he identified the copper wire in the back of the defendant’s truck as belonging to AT & T. Officer Cross said the wire had an AT & T symbol on it. He said a manager from AT & T also identified the wire as belonging to AT & T, and the manager stated that no one had permission to be in possession of it. Officer | (¡Cross said the wire was so voluminous that they could not put it in their police cruiser, so they returned it to AT & T.
 

 On cross examination, Officer Cross read his police report, which stated that
 
 *578
 
 the “reporting person observed [defendant] removing several rows of copper telephone wire from the telephone poles located on Haynes Boulevard.” Officer Cross read the report further, stating that the reporting person, an AT & T employee, attempted to stop defendant, but defendant fled. Later in his testimony Officer Cross confirmed that the reporting person was “Mr. Eugene.” That the reference to “Mr. Eugene” was to AT & T employee Kenneth Kararick, became apparent when the defendant recalled Kararick as a witness, addressed him as “Mr. Eugene,” and Kararick responded without comment upon being addressed by that name. At another point in the police report, Officer Cross wrote that when officers spoke to Kararick, he stated that he saw defendant and Boutan picking up the copper wire and placing it in their truck, a 1998 GMC 3500. Officer Cross confirmed that in his report he first had written that Kararick had seen the defendant passing by in his truck.
 

 Officer Cross conceded on cross examination that the photo of the wire in the back of a white pickup truck was not taken at the scene of the defendant’s arrest.
 

 Chad Clark, Network Manager for AT & T, was employed by AT & T on August 1, 2007. On that date he had occasion to respond to an incident that occurred near Haynes Boulevard in New Orleans East. Clark saw the suspects that day, in a neighborhood called Bunker Hill; he identified the defendant in court as one of them. Clark testified that Kenneth Karar-ick called to tell him about the theft, that he had telephoned the police, and that he was following the thief. WhenJ^Clark first came into contact with the defendant the copper wiring was in the back of a U-Haul flatbed truck. Clark said the wiring belonged to AT & T. He said AT & T recycled its copper wiring. On the date of the theft he was allowed to keep the wiring. He later put it in a recycling bin at AT & T’s yard. Clark took the photos of the wiring in his company truck, and he identified those photos.
 

 Clark testified that the cable in question was approximately six hundred feet, and that it weighed approximately three hundred fifty pounds. When the prosecutor asked Clark what the value of the cable was on August 1, 2007, Clark responded that AT
 
 &
 
 T received $3.85 a pound for it in March or April of the following year. Clark calculated that AT
 
 &
 
 T had received more than $1,300.00 for it. Clark never gave the defendant or anyone else permission to take the wire at issue.
 

 During cross examination, Clark identified, as State Exhibit No. 2, a photo he took of the wire in question, a marking: “Superior 6, TC06.” He testified that the covering on the wire was a protective material, and that AT & T was the only company that used that protective material. He also said AT & T was the only company that hung that cable in the field in New Orleans. Clark also said the cable had a telephone symbol on it to show that it was telephone cable. He said he took the photographs on the day the cable was stolen.
 

 Officer Cross, called as a witness by the defendant, confirmed that the truck in which the wire was photographed was not the truck the defendant was driving at the time of the arrest, and that the photo did not depict the location of the arrest. The officer said “[w]e allowed AT & T workers to take it.”
 

 Kenneth Kararick, called as a witness by the defendant, denied telling police he had observed the defendant removing wire from telephone poles. He also |8denied having seen the defendant pick any wire off the ground and place it in the back of the U-Haul truck. Kararick confirmed on cross examination that the defendant was
 
 *579
 
 the person he saw driving down Hayne Boulevard with the AT
 
 &
 
 T wire.
 

 ERRORS PATENT
 

 A review of the record for patent errors reveals none.
 

 ASSIGNMENTS OF ERROR NOS. 1 AND 2
 

 In his first assignment of error, the defendant argues that the evidence is insufficient to support his conviction, specifically arguing that the evidence is insufficient to prove beyond a reasonable doubt that he took the cable. In the defendant’s second assignment of error he argues that the evidence is insufficient to support his conviction, specifically arguing that the evidence was insufficient to establish that the value of the cable was five hundred dollars or more.
 

 This Court set forth the applicable standard of review for sufficiency of the evidence in
 
 State v. Huckabay,
 
 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111, as follows:
 

 In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Green,
 
 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.
 
 State v. Mussall,
 
 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be | nimpinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Mussall; Green; supra.
 
 “[A] reviewing court is not called upon to decide whether it believes the -witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 State v. Smith,
 
 600 So.2d 1319 (La.1992) at 1324.
 

 In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Shapiro,
 
 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from
 
 Jackson v. Virginia, supra,
 
 but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.
 
 State v. Wright,
 
 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the
 
 Jackson
 
 reasonable doubt standard.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987).
 

 Huckabay,
 
 2000-1082, p. 32, 809 So.2d at 1111, quoting
 
 State v. Ragas,
 
 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99,106-107.
 

 La. R.S. 14:67(A) and (B)(1) stated, at the time of the August 2007 alleged theft in the instant case:
 

 A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations.
 
 *580
 
 An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
 

 B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
 

 Thus, to convict in the instant case the State had to prove beyond a reasonable doubt the following elements: (1) a misappropriation or taking of anything of value; (2) belonging to another; (8) either without the consent of the other or by means of fraudulent conduct, practices or representations; (4) with the intent to deprive the other permanently of whatever was the subject of the misappropriation or taking; and (5) where the object of the misappropriation or | staking is valued at five hundred dollars or more.
 
 State v. Nicholas,
 
 97-1991, p. 20 (La.App. 4 Cir. 4/28/99), 735 So.2d 790, 800.
 

 In the instant case, Kenneth Ka-rarick testified that on the day of the defendant’s arrest he was working for AT & T, and that contractors for AT & T were removing telephone cable/wire from poles across the levee and on the other side of the railroad tracks that had formerly been used to provide service to camps destroyed by Hurricane Katrina. Kararick’s supervisor, Chad Clark, testified that the contractors would remove the cable from the poles, set it on the ground, and come back and roll it up on a reel and then take it back to the yard to later be recycled at a plant in Alabama. Clark said no one other than AT & T personnel had permission to take the wire.
 

 On that day Kararick had just reported another apparent attempted theft of other nearby cable by two individuals acting in concert. Kararick got out of his truck to take down the license plate number of the vehicle those other two individuals were driving. Those two individuals obviously observed this action by Kararick, for when he reentered his truck one of them approached him and pointed to defendant, asking: “Well, what about this guy” — as if to say “why are you stopping us from taking this cable but letting him take some.” Kararick turned to see the defendant driving by in a U-Haul truck loaded with AT & T cable. Another individual was in the truck with the defendant.
 

 Kararick reported the defendant to police and followed him until the defendant entered a neighborhood Kararick did not wish to enter. Minutes later, however, police called Kararick and directed him to a location in that neighborhood where police had stopped the defendant in the U-Haul truck with the AT & T cable in it. Kararick’s AT & T supervisor on the day in question, Chad [n Clark, called another employee to assist Kararick in loading the cable into the back of Clark’s truck, because there was so much of it. Clark testified that the cable was approximately six hundred feet in length and weighed approximately three hundred fifty pounds.
 

 Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the cable was on the ground that day, having been taken down by AT & T contractors working in the area for later pickup by them or AT & T personnel, and that defendant, assisted by his codefendant, Boutan, loaded some of the cable belonging to AT & T onto the U-Haul truck and drove off with it.
 

 In the defendant’s second assignment of error he argues that the evidence was insufficient to establish that the value
 
 *581
 
 of the cable was five hundred dollars or more.
 

 The only evidence as to the value of the cable came through the testimony of AT & T supervisor Chad Clark. Following Clark’s testimony that the cable was approximately six hundred feet long and weighed approximately three hundred and fifty pounds, the prosecutor asked:
 

 Q. And based on that weight, what was the value of that cable on August 1st of 2007?
 

 A. The value that we received was in March or April of the following year. And it was $8.85 a pound.
 

 Q. That’s $8.85 a pound?
 

 A. $3.85 a pound.
 

 Q. And I’m sorry. For the Record [sic], how many pounds did you say that was?
 

 A. 349 pounds, roughly.
 

 |12Q. So do you know what the total would be?
 

 A. We figured out, it was 1,300 plus dollars.
 

 The three hundred forty-nine pound gross weight of the cable multiplied by $3.85 equals a total of $1,343.65. This was the value of the cable in either March or April 2008. However, there was no evidence introduced upon which one reasonably could have estimated the value of the cable as of August 1, 2007, the date of the theft.
 

 The State is correct in arguing in its appellate brief that the testimony of the owner of the property taken in a theft is sufficient to establish its value for the grade of the offense. See
 
 State v. Hoskin,
 
 605 So.2d 650, 652 (La.App. 4 Cir. 1992)(“[W]hen the degree of the crime is based on the value of the stolen property possessed, the self-serving testimony of the owner is sufficient if it is clear and uncontradicted.”).
 

 However, in the instant case, the self-serving testimony of Chad Clark, a representative of the owner of the property, was not clear as to the value of the property on day of the theft.
 

 In
 
 Hoskin, supra,
 
 the defendant was seen exiting the stolen Monte Carlo after it crashed into a utility pole on July 23, 1990. At trial the victim testified that his 1984 Monte Carlo was in good working condition and had no dents; he estimated the car had been worth three thousand dollars when it was stolen on July 14,1990. This Court found that evidence sufficient to establish that the value of the victim’s vehicle was at least five hundred dollars, and affirmed the defendant’s conviction and sentence for illegal possession of the stolen car.
 

 In
 
 State v. Williams,
 
 598 So.2d 1265 (La.App. 4 Cir.1992) this Court reversed the defendant’s conviction for illegal possession of a stolen thing valued |1sat five hundred dollars or more because the only evidence of the value of the stolen thing, a 1980 Cadillac automobile, was the owner’s testimony that she had purchased it in 1982 for $25,200.00. The owner had also testified that she had some unspecified maintenance problems with the car and had intended to trade it in. When the car was stopped as the defendant was driving it several days after it was stolen in September 1990, it had a dent on the left front side and a hole in the steering column. One of the stories the defendant told police was that he had purchased the car for twenty dollars. This Court noted that the State had failed to present any photographs, estimates, an original bill of sale or testimony to indicate the value of the car at the time it was possessed by the defendant. However, the cable stolen in the instant case would not be subject to the same loss in value due to depreciation and
 
 *582
 
 wear and tear similar to that experienced by an automobile over time.
 

 The State sought writs in
 
 Williams
 
 and, in a
 
 per curiam, State v. Williams,
 
 610 So.2d 129 (La.1992), the Louisiana Supreme Court found that, while the State’s case may have asked jurors to speculate on the range of values for the vehicle, a rational trier of fact could have determined that the vehicle had “some value,” even if no more than the twenty dollars the defendant had told police he paid for it.
 
 Williams,
 
 610 So.2d at 130. The court affirmed this Court’s reversal of the defendant’s conviction for illegal possession of a stolen thing valued at five hundred dollars or more, but remanded the case to the trial court for entry of a judgment of conviction of illegal possession of a stolen thing with a value of less than one hundred dollars,
 
 [9]
 
 and for resentencing.
 

 |uIn
 
 State v. Boyd,
 
 2008-0659 (La.App. 4 Cir. 11/12/08), 999 So.2d 40, the defendant was charged with one count of theft of an item valued at five hundred dollars or more, the same offense defendant in the instant case was charged with and convicted of. The theft occurred in July 2007. A witness testified at trial that the bicycle defendant allegedly stole originally cost approximately five hundred twenty-five dollars, being one of two bicycles with a similar value purchased by her and her husband at Christmas for their children at least two years before defendant’s November 13, 2007 trial. No evidence was introduced as to the value of the bicycle or its physical condition at the time it was stolen. The trial court found defendant guilty of theft of an item valued between three hundred and five hundred dollars. On appeal, the defendant argued that the State failed to prove the value of the bicycle at the time of the taking. This Court agreed, finding the evidence insufficient to sustain the conviction for theft of an item valued between three hundred and five hundred dollars. This Court found the evidence supported only a conviction for theft of an item valued at under three hundred dollars, and entered a judgment of guilty to that responsive verdict pursuant to La. C.Cr.P. art. 821(E). However, the cable stolen in the instant case would not be subject to the same loss in value due to depreciation and wear and tear similar to that experienced by a bicycle over time.
 

 In
 
 State v. Moses,
 
 2001-0909 (La.App. 4 Cir. 12/27/01), 806 So.2d 83, the owner of a stolen truck testified that he purchased his truck for $18,000 to $19,000 in 1992, five and a half years prior to the day the defendant was found in possession of it. The State presented no evidence as to its condition on that date, but it offered into evidence photographs of the truck taken after it had been recovered. This Court reviewed the photographs and determined that the truck’s 11ficondition was such that the jury could have found that the truck was worth at least five hundred dollars. In the instant case, as distinguished from
 
 Moses, supra,
 
 pictures of the stolen property would be of little use in establishing its value.
 

 In
 
 State v. Riley,
 
 98-1323 (La.App. 4 Cir. 8/4/99), 744 So.2d 664, the victim testified that he had purchased his 1987 Oldsmobile for $3,000 in 1996, and that the vehicle was in very good condition and had no dents and a new front bumper when it was stolen on the night of September 5, 1997. This Court found that evidence sufficient to establish that the vehicle was valued at over five hundred dollars, rejecting the defendant’s argument that the owner’s testimony was insufficient to es
 
 *583
 
 tablish the value of the vehicle because it was ten years old when purchased. Defendant’s conviction and sentence for possession of stolen property valued at over five hundred dollars were affirmed.
 

 In
 
 State v. Armstead,
 
 572 So.2d 762 (La.App. 4 Cir.1990), the defendant was convicted of illegal possession of stolen property valued between one hundred and five hundred dollars — four tires and wheel rims that had been removed from a stolen vehicle. On appeal, the defendant claimed that the evidence had been insufficient to establish that the value of the property was over one hundred dollars. However, the victim testified that he purchased the four tires for approximately two hundred and eighty dollars eighteen months before his car was stolen, and photographs of the tires and rims had been introduced into evidence. Thus, this Court held that any rational trier of fact could have concluded that the value of the stolen property was one hundred dollars or more.
 

 In
 
 State v. Collins,
 
 588 So.2d 766 (La. App. 4 Cir.1991), the owner of the stolen vehicle testified that it was in excellent condition at the time it was stolen and estimated its value at approximately $4,000. This testimony — presumably as |1fito the “excellent condition” of the vehicle — was “corroborated” by the police officer who had apprehended the defendant driving the vehicle. The defendant offered no evidence to contradict the owner’s estimation of the car’s value. This Court found the evidence sufficient to sustain the defendant’s conviction for illegal possession of a stolen thing valued at five hundred dollars or more.
 

 In the instant case, there was no testimony as to the value of the cable at the time it was stolen by defendant, only its value seven to eight months
 
 after
 
 the theft. This situation is the opposite of that ordinarily encountered with valuation matters in theft and illegal possession of stolen property cases. In the ordinary case, as illustrated by most of the cases cited here-inabove, the issue is whether the original purchase price was sufficient circumstantial evidence, either alone or in combination with other evidence, from which a rational trier of fact could find beyond a reasonable doubt the value at the time of the theft/illegal possession by the respective defendant.
 

 In the instant case, the jury was called upon to value telephone cable as of the day of the theft based on a per pound salvage price obtained for the cable seven to eight months
 
 after
 
 the theft. Further, unlike the situation presented by all of the cases discussed above, in the instant case depreciation in value because of age and wear and tear was not a factor in valuation as of the date of the theft/illegal possession.
 

 It cannot reasonably be argued that the per pound price of salvaged telephone cable, or that of its most valuable component, copper, a commodity with a regularly fluctuating price
 
 [10]
 
 , were remotely within the realm of common |17knowledge possessed by an average juror. It may have been within the realm of general knowledge possessed by an average Orleans Parish juror at the time of defendant’s trial that the price of copper generally had been increasing in recent years and that thefts of various copper products in the greater New Orleans metropolitan area in the aftermath of Hurricane Katrina were rampant. However, without some other reference point for the average juror, it was purely speculative of the jury to conclude that the
 
 *584
 
 value of the cable at the time of the theft was five hundred dollars or more based simply on the fact that its value seven to eight months after the theft was $1,300.00. However, nothing in this opinion should be construed as a suggestion that a valuation of a stolen property as of a date different from that of the date of the theft is
 
 per se
 
 irrelevant to establishing value under La. R.S. 14:67. It all depends on the nature of the property.
 

 Moreover, that one of the only things possibly within the common knowledge of an average juror as to the value of the telephone cable was that the price of its primary component, copper, regularly fluctuated and generally had been rising, weighs against the jury being able to infer the value of the cable on the date of the theft based on the value of the cable seven to eight months after the theft.
 

 That the value was placed on the cable “only” seven to eight months after the theft was immaterial under the circumstances of the instant case insofar as determining beyond a reasonable doubt its value on the date of the theft. Simply put, accepting that the value of the cable was $1,300.00 in March or April 2008, no rational trier of fact could have inferred beyond a reasonable doubt that the value was five hundred dollars or more on August 1, 2007, the day of the theft. There was no rational basis for such an inference.
 

 | ^Considering the results in
 
 Williams
 
 and
 
 Boyd
 
 and the nature of the stolen property in the instant case, viewing all the evidence in a light most favorable to the prosecution, we cannot say that the State established beyond a reasonable doubt that the value of the AT & T cable taken by the defendant and/or the copper wire inside of it was five hundred dollars or more on the day of the theft.
 

 Nevertheless, it cannot be disputed that the AT & T cable had “some value,” as the Louisiana Supreme Court found the automobile did in
 
 Williams, supra.
 
 La. R.S. 14:67 defines theft, in pertinent part, as the “taking of anything of value ...,” and La. R.S. 14:2(2) states that “[ajnything of value must be given the broadest possible construction, including any conceivable thing of the
 
 slightest
 
 value,.... ” (Emphasis added).
 

 Therefore, any rational trier of fact could have found beyond a reasonable doubt that the cable had “less than a value of three hundred dollars,” as per La. R.S. 14:67(B)(3) in effect at the time of the defendant’s arrest.
 

 Accordingly, we must reverse the defendant’s conviction for theft where the taking amounts to a value of five hundred dollars, and remand the case to the trial court for entry of a judgment of guilty of theft where the taking amounts to less than a value of three hundred dollars and for resentencing.
 
 [11]
 

 \ ^ASSIGNMENT OF ERROR NO. 3
 

 PRO SE ASSIGNMENT OF ERROR NO. 4
 

 In his third counseled assignment of error, and his fourth pro se assignment
 
 *585
 
 of error, the defendant argues that the State elicited false testimony at trial from AT
 
 &
 
 T supervisor Chad Clark concerning the value of cable allegedly stolen by the defendant, and that the State failed to correct that false testimony. This argument by the defendant is based on testimony given by an AT & T employee, Karl Peterson, who valued the cable at the July 2, 2008 pretrial
 
 Daubert
 
 hearing, which valuation was somewhat different that the valuation later given at trial by AT & T supervisor Chad Clark. Peterson did not testify at trial.
 

 The defendant is arguing an issue under
 
 Napue v. Illinois,
 
 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959), which held that where a prosecutor allows a State witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness’s testimony reasonably could have affected the jury’s verdict, even if the testimony goes only to the credibility of the witness. However, the grant of a new trial based upon a
 
 Napue
 
 violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the State knew they were false; and (3) the statements were material.
 
 State v. Phillips,
 
 2010-0582, p. 5 (La.App. 4 Cir. 2/17/11), 61 So.3d 130, 136, citing
 
 United States v. O’Keefe,
 
 128 F.3d 885, 893 (5 Cir.1997).
 

 AT & T valuation expert Karl Peterson testified at the
 
 Daubert
 
 hearing that the average value of the copper in the wire stolen by the defendant, for the month of April 2008, would have been roughly $720.00 on the low end, and $878.00 on the high end. Both of these amounts are considerably less than the $1,300.00 plus value placed on the cable by AT & T supervisor Chad Clark at trial. Peterson |20testified at the
 
 Daubert
 
 hearing that AT & T also sells the plastic sheathing and some iron from the cable, but that he was concerned primarily with the copper.
 

 Peterson, who valued copper many times a day for AT
 
 &
 
 T as part of his regular employment duties with the company, testified in great detail at the
 
 Daubert
 
 hearing about the process of scrapping/valuing the telephone cable. Peterson obviously was more qualified to place a value on the cable than was Chad Clark.
 

 However, Peterson’s high and low valuations — of solely the copper in the wire— were greater than five hundred dollars. Thus, even assuming Clark’s testimony could be characterized as “actually false,” it was effectively “actually false” only to the extent that Clark’s valuation of the cable at $1,300.00 was greater than the $720.00 on the low end and $878.00 on the high end valuations by Peterson. Given that even the low end of Peterson’s valuation was greater than five hundred dollars, the difference, meaning any actual falsity, was not material.
 

 Moreover, as we have already determined to reduce the defendant’s conviction to that of theft of less than three hundred dollars under La. R.S. 14:67(B)(3), based on a finding that that the cable had “some value” consistent with
 
 Williams, supra,
 
 Chad Clark’s testimony concerning the value of the cable is not material, and this
 
 Napue
 
 issue is moot.
 

 PRO SE ASSIGNMENT OF ERROR NO. 1
 

 In his first pro se assignment of error, the defendant argues that the trial court erred in admitting into evidence photographs taken by AT & T supervisor Chad Clark. The photographs were of his white pickup truck containing cable wire in the back, taken on the day of the incident; a closeup photograph of the cable and 121 identification marks on it that Clark took later; and another photograph taken later of outstretched cable approximating the
 
 *586
 
 length of the cable stolen by defendant on the day of the incident.
 

 The defendant filed a motion prior to trial alleging that the photograph of Clark’s white truck was illegal and seeking to have it suppressed. The defendant also made oral objections when the State introduced the photographs. The trial denied the oral objections.
 

 The defendant, who represented himself at trial, essentially argued at trial what he now argues on appeal—that the photographs should not have been admitted because the State never proved ownership of the white pickup truck; the photos were fabricated; they were illegally obtained; and they were false.
 

 The photographs in question, introduced by the State, were relevant in that they had a tendency to make the existence of a fact that was of consequence to the determination of the defendant’s guilt more probable that it would have been without the evidence. See La. C.E. art. 401. Relevant evidence is generally admissible. La. C.E. art. 402.
 

 [7] The photographs depicted the stolen cable and symbols on it identifying it as telephone cable. The photographs depicted the size/volume of the cable—generally supporting Officer Cross’s testimony that the cable would not fit into his police cruiser, for which reason he let AT & T personnel have it back. The photographs supported AT & T employee and witness Kenneth Kararick’s testimony that his supervisor, Chad Clark, got another AT & T employee to help Kararick remove the cable from the defendant’s truck and put it into Clark’s truck.
 

 The requirement of authentication or identification as a condition precedent to admissibility of evidence is satisfied by evidence sufficient to support a finding laathat the matter in question is what its proponent claims it to be. La. C.E. art. 901. AT
 
 &
 
 T supervisor Chad Clark took the photographs, and he testified that they depicted exactly what they depicted. The State did not represent the photographs to depict anything other than what they depicted. The photographs were relevant and properly authenticated. Therefore, they were admissible.
 

 PRO SE ASSIGNMENT OF ERROR NO. 2
 

 In his second pro se assignment of error, the defendant argues that the trial court erred when it allowed his then attorney, Robert Jenkins, to deny him proper assistance of counsel and allowed a conflict of interest to go uncorrected. Defendant was represented by counsel other than Robert Jenkins from at least December 14, 2007 to October 1, 2008. Robert Jenkins was appointed to represent the defendant on October 3, 2008. He represented the defendant when the defendant was first declared not competent to proceed on February 10, 2009, and represented him through two more determinations of continued incompetency, until the defendant was declared competent to proceed on December 3, 2009.
 

 On December 14, 2009, the defendant filed a motion alleging ineffective assistance of counsel and a conflict of interest as to Robert Jenkins, which the trial court denied, finding that Jenkins had not been ineffective. This court denied the defendant’s writ application seeking relief from that ruling, noting that the defendant could raise the ineffective assistance of counsel claim on application for post conviction relief. See fn. 4.
 

 Generally, the issue of ineffective assistance of counsel is more properly addressed in an application for post-conviction relief filed in the trial court, where the
 
 *587
 
 court can conduct a full evidentiary hearing.
 
 State v. Desilva,
 
 2009-0116, p. 5 (La.App. 4 Cir. 7/22/09), 16 So.3d 1186, 1188-1189,
 
 writ denied,
 
 2009-2393 (La. 11/12/10), 49 So.3d 879. However, where the record on appeal discloses sufficient evidence upon which to make a determination of counsel’s effectiveness, such decision may be made on appeal in the interest of judicial economy.
 
 State v. Stallworth,
 
 2008-1389, p. 6 (La.App. 4 Cir. 4/29/09), 11 So.3d 541, 545, citing
 
 State v. Seiss,
 
 428 So.2d 444, 448 (La.1983).
 

 Based on the defendant’s argument on appeal and his motion alleging ineffective assistance of counsel filed in the trial court in December 2009, the defendant appears to allege that Robert Jenkins failed to investigate his case or consult sufficiently with the defendant, and that Robert Jenkins “attacked” him by having him declared incompetent to proceed.
 

 The record on appeal is inadequate to address this claim of ineffective assistance of counsel. The defendant can raise it, if he chooses, in the trial court in an application for post-conviction relief.
 

 As for the alleged conflict of interest, it appears that what the defendant refers to as a conflict of interest was his disagreement with one more of Mr. Jenkins defense strategies. The defendant offers no authority for the proposition that such disagreement equates to a conflict of interest.
 

 PRO SE ASSIGNMENT OF ERROR NO. 3
 

 In his third pro se assignment of error, the defendant argues that the trial court erred by forcing him to go to trial with an attorney who “was inhibited by conflicting loyalties,” violating his right to effective assistance of counsel.
 

 The January 6, 2010 trial transcript reflects that prior to the start of trial the court stated that it was going to appoint Robert Jenkins to assist the defendant in | ^defending himself. The defendant insisted on representing himself at trial. When the defendant strongly objected to the appointment of Mr. Jenkins, the trial court said it would not appoint him. The trial court then stated that it would appoint another attorney, Mr. Hortenstine, from the Orleans Parish Indigent Defenders Office (“OIDP”) to sit at the defense table with defendant and assist him, if he needed any help. The defendant assented to that, stating: “Right, I want the assistance. I’m representing myself. But he could assist me if I need any help.” However, the prosecutor noted that an OIDP attorney had represented the defendant’s codefendant, who had pleaded guilty some eleven months earlier. The trial court then informed the defendant that he could not appoint Mr. Hortenstine to sit at the defense table and assist the defendant unless the defendant waived the conflict. The defendant refused to waive the conflict.
 

 The trial court then stated that it was going to ask Mr. Jenkins to sit next to defendant at the defense table in case he needed assistance. The defendant strongly reiterated that he would not accept any help from Mr. Jenkins, whom he accused of sending him to the mental institution, a reference to the defendant previously being declared incompetent to proceed. The defendant strongly protested to being forced to sit with Mr. Jenkins during his trial. The trial court then stated that it would respect defendants’ wishes, but was going to have Mr. Jenkins sit in the first row during the trial, in case defendant needed any assistance during the trial. The defendant again stated that he did not want Mr. Jenkins to have anything to do with his case, and stated that he was not going to talk to Mr. Jenkins. The defendant asked that the record reflect that Mr.
 
 *588
 
 Jenkins had nothing to do with his case. The record does not indicate that the defendant consulted with Mr. Jenkins at anytime during the trial.
 

 |2SIn
 
 State v. Leger,
 
 2005-0011, p. 43 (La.7/10/06), 936 So.2d 108, 142, the Louisiana Supreme Court commented on the right to counsel, stating:
 

 La. Const, art. 1, § 13 provides in pertinent part that “at each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.” The Sixth Amendment to the United States Constitution likewise carries such a guarantee. In
 
 State v. Harper,
 
 381 So.2d 468 (La.1980), this court explained:
 

 As a general proposition a person accused in a criminal trial has the right to counsel of his choice.
 
 State v. Leggett,
 
 363 So.2d 434 (La.1978);
 
 State v. Mackie,
 
 352 So.2d 1297 (1977);
 
 State v. Anthony,
 
 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel.
 
 Gideon v. Wainwright,
 
 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963);
 
 Argersinger v. Hamlin,
 
 [407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) ];
 
 State v. Adams,
 
 369 So.2d 1327 (La.1979);
 
 City of Baton Rouge v. Dees,
 
 363 So.2d 530 (1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him.
 
 State v. Rideau,
 
 278 So.2d 100 (La.1973). An indigent’s right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice.
 
 State v. Jones,
 
 376 So.2d 125 (La.1979);
 
 State v. Leggett, supra; State v. Mackie, supra.
 

 The defendant’s primary argument is that he was forced to go trial with counsel with conflicting loyalties. He was not. The defendant, who had filed a number of pro-se pretrial motions and writs, made an informed decision to represent himself. There is no indication that counsel, Robert Jenkins, who ultimately was appointed to assist the defendant, had any possible conflicting loyalties. That the defendant may have disagreed with Mr. Jenkins’s defense strategy or strategies does not equate to conflicting loyalties. Insofar as Mr. Hor-tenstine, the OIDP attorney who was unable to represent the defendant because another OIDP attorney had represented the defendant’s codefendant, the defendant [ 2(jWas not forced to waive the conflict and go to trial assisted by Mr. Hortenstine. He had the choice of having Mr. Jenkins assist him.
 

 There is no merit to this pro assignment of error.
 

 PRO SE ASSIGNMENT OF ERROR NO. 5
 

 In his fifth pro se assignment of error, the defendant complains that the trial court erred in permitting inconsistent statements and false testimony, citing “Exhibit 15” to his pro se brief, which is a copy of trial transcript page. The defendant questioned AT & T employee Kenneth Ka-rarick as to whether Kararick told police that he observed the defendant taking wire off a pole. Kararick replied in the negative. The defendant then purported to “impeach” Kararick by showing him a police report, presumably containing something inconsistent with Kararick’s answer. The trial court,
 
 sua sponte,
 
 informed the defendant he could not show the police report to Kararick, because he could not
 
 *589
 
 ask the witness to review a statement he did not write.
 

 However, the defendant had already elicited testimony from Officer Cross, who read from his police report and testified that “the reporting person observed [the defendant] removing several rows of copper telephone wire from the telephone poles located on Haynes Boulevard.” Officer Cross later identified that “reporting person” as “Mr. Eugene,” who, it later was made clear, was Kenneth Kararick.
 

 The defendant suggests that his conviction was obtained through the use of false testimony. As discussed earlier in this opinion, such an assertion of false testimony is evaluated under the criteria set forth in
 
 Napue v. Illinois, supra, \
 
 27among which is the requirement the statements at issue be shown to be actually false.
 

 In the instant case, the defendant has made no showing that Kenneth Karar-ick testified falsely when he denied that he had seen defendant taking wire off a pole. It is true that during the defendant’s cross examination of Officer Cross he had the officer read his police report, in which Cross wrote that the “reporting person,” Kararick, had observed the defendant removing several rows of copper telephone wire from the telephone poles located on Haynes Boulevard. However, during Ka-rarick’s initial direct examination by the State he testified that AT & T contractors were removing the wires from the poles, and that he did not see defendant until he observed the defendant drive past in the U-Haul truck loaded with AT & T wire. That Kararick’s testimony was inconsistent with what Officer Cross had written in his police report does not establish that Ka-rarick’s testimony was actually false. Therefore, the defendant has not met the standard required to urge this assignment of error successfully.
 

 PRO SE ASSIGNMENT OF ERROR NO. 6
 

 In his sixth pro se assignment of error, the defendant argues that the trial court erred when it “allowed fabricated statements in a coached police report.” This claim is extremely vague, and the defendant has failed to cite any allegedly fabricated statement. It appears the defendant is referring to his statement given to Officer Cross on the scene, after police stopped him.
 

 The defendant argues in this assignment that he should have been read his
 
 Miranda
 
 rights when police detained him, and that before a confession may be introduced into evidence the State must establish that the accused was advised of l^such rights. The defendant also argues that there is no evidence in the police report that he knowingly and intelligently waived his rights. The defendant notes that he made no recorded statement, nor did he sign any statement.
 

 Officer Cross testified at trial that after informing the defendant of his rights the officer asked the defendant about the cable. The officer testified that the defendant told him that a man who worked for AT & T told the defendant that if the defendant helped the man unload the copper wire the defendant could have some. Officer Cross testified at a December 14, 2007 motion to suppress hearing that his partner advised defendant and his companion, Don Boutan, of their rights. Officer Cross replied in the affirmative when asked whether the defendant and Boutan indicated that they understood those rights.
 

 At no point in either his trial testimony or motion hearing testimony did Officer Cross indicate that the defendant waived his rights before giving a statement.
 

 
 *590
 
 The defendant’s statement that an AT & T employee told him that if he helped the employee unload the copper wire the defendant could have some of it suggested knowledge by the defendant that the wire belonged to AT & T. Thus, his statement was somewhat inculpatory.
 

 This court set forth the applicable law on the admissibility of inculpatory statements in
 
 State v. Butler,
 
 2004-0880, p. 4 (La.App. 4 Cir. 1/12/05), 894 So.2d 415, 418, as follows:
 

 It is well settled that before the state may introduce an inculpatory statement or confession into evidence, it must affirmatively show that the statement was free and voluntary and not the result of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D);
 
 State v. Gradley,
 
 97-0641 (La.5/19/98), 745 So.2d 1160, 1166. The State 129must prove that the accused was advised of his Miranda
 
 [12]
 
 rights and voluntarily waived these rights in order to establish the admissibility of a statement made during custodial interrogation.
 
 State v. Green,
 
 94-0887, pp. 9-10 (La.5/22/95), 655 So.2d 272, 280;
 
 State v. Labostrie,
 
 96-2003, p. 5 (La.App. 4 Cir. 11/19/97), 702 So.2d 1194, 1197. A court must look to the totality of the circumstances surrounding the confession to determine its voluntariness.
 
 State v. Lavalais,
 
 95-0320, p. 6 (La.11/25/96), 685 So.2d 1048, 1053. The testimony of police officers alone can be sufficient to prove the defendant’s statements were freely and voluntarily given.
 
 State v. Jones,
 
 97-2217, p. 11 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 396.
 

 While there was no direct evidence that the defendant affirmatively waived his rights before making the statement to Officer Cross, given the defendant’s actions in representing himself prior to and at his trial, it is reasonable to conclude that he was well-aware that he did not have to say anything to the officer, and that he made what he viewed at the time as an exculpatory statement freely and voluntarily. Thus, it cannot be said that the trial court erred in denying the defendant’s motion to suppress the statement.
 

 Even assuming
 
 arguendo
 
 that the trial court erred in denying the motion to suppress the statement, the erroneous admission of an inculpatory statement or confession is subject to the harmless error analysis.
 
 State v. Harris,
 
 2001-2730, p. 26 (La.1/19/05), 892 So.2d 1238, 1260. An error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error.
 
 State v. Robertson,
 
 2006-1537, p. 9 (La.1/16/08), 988 So.2d 166, 172;
 
 State v. Barbour,
 
 2009-1258, p. 14 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1150,
 
 writ denied,
 
 2010-0934 (La.11/19/10), 49 So.3d 396,
 
 cert. denied, Barbour v. Louisiana,
 
 -U.S.-, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011). Considering all of the evidence, it can be said beyond a reasonable doubt that thej^guilty verdict rendered in the instant ease was surely unattributable to any possible error by the trial court in denying the defendant’s motion to suppress the statement.
 

 PRO SE ASSIGNMENT OF ERROR NO. 7
 

 The defendant’s seventh pro se assignment of error reads, in its entirety:
 

 The court erred when it denied petitioner an evidentiary hearing by the court, which a petitioner is entitled to a hearing when facts alleged, if true, would entitle him to relief.
 

 
 *591
 
 Considering the lack of specificity of this assignment of error, defendant has effectively failed to brief it. Thus, it is considered abandoned. See
 
 State v. Alexander,
 
 2003-2072, p. 17 (La.App. 4 Cir. 5/19/04), 875 So.2d 853, 862 (“This assignment of error was not briefed and is deemed to have been abandoned.”); see also Rule 2-12.4, Uniform Rules of Louisiana Courts of Appeal (“All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.”).
 

 PRO SE ASSIGNMENT OF ERROR NO. 8
 

 In his eighth pro se assignment of error, the defendant argues that the trial court erred when it denied his “Motion to Suppress,” as well as all of his motions that were denied by the trial court and which were the subject of his writ applications to this court: “CONFLICT OF INTEREST, INEFFECTIVE ASSISTANCE OF COUNSEL, MOTION OF CONFLICT OF INTEREST GRANT RELIEF, WRIT: HABEAS CORPUS, petitioner has adequate remedy on appeal, violation of due process.”
 

 However, the defendant presents no argument or specifics as to these issues. Thus, he has effectively failed to brief this assignment of error and it is considered | S1 abandoned.
 
 State v. Alexander, supra;
 
 Rule 2-12.4, Uniform Rules of Louisiana Courts of Appeal.
 

 PRO SE ASSIGNMENT OF ERROR NO. 9
 

 In this last of his nine pro se assignments of error, the defendant argues that the trial court erred when it allowed a conviction obtained through the use of false evidence. The defendant fails to specify the alleged false evidence in this assignment of error. Moreover, the issue of the State presenting alleged false evidence — the testimony of AT & T supervisor Chad Clark as to the value of the cable stolen by defendant — was fully addressed and resolved in addressing defendant’s counseled assignment of error number three and his pro se assignment of error number four,
 
 supra.
 

 Thus, there is no merit in this, the defendant’s final assignment of error.
 

 In summary, there is merit to the defendant’s claims in his counseled assignment of error number two, that the evidence was insufficient for any rational trier or fact to have found beyond a reasonable doubt that the value of the cable stolen by defendant was in the amount of five hundred dollars or more. However, the evidence was sufficient to find beyond a reasonable doubt that the cable had a value less than three hundred dollars, the lowest grade of theft under La. R.S. 14:67 at the time of the defendant’s arrest.
 

 There is no merit to any of the defendant’s other counseled or pro se assignments of error, and he is free to raise the issue of ineffective assistance of counsel in an application for post conviction relief.
 

 For the foregoing reasons, we reverse the defendant’s conviction and sentence for theft where the taking amounts to a value of five hundred dollars or |S2more, but remand the case to the trial court for entry of a judgment of conviction of theft where the taking amounts to a value of less than three hundred dollars and for resentencing based on that conviction.
 

 The defendant is free to raise the issue of ineffective assistance of counsel in an application for post-conviction relief.
 

 CONVICTION AND SENTENCE REVERSED; REMANDED
 

 [1]
 

 . As in effect at the time of the offense, August 2007, prior to the enactment of Acts 2010, No. 585, § 1, which increased the amount to one thousand dollars. Defendant was charged jointly with Don Boutan, who pleaded guilty to theft under one hundred dollars on February 10, 2009.
 

 [2]
 

 .
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 

 [3]
 

 . State v. LeBlanc,
 
 unpub., 2008-1264 (La. App. 4 Cir. 11/7/08) (“Relator has an adequate remedy on appeal.”);
 
 State v. LeBlanc,
 
 unpub., 2009-0444 (La.App. 4 Cir. 4/20/09) ("Relator has an adequate remedy on appeal," noting that relator had been found incompetent to proceed and that a competency hearing was scheduled for May 6, 2009).
 

 [4]
 

 .
 
 State v. LeBlanc,
 
 unpub., 2009-1512 (La. App. 4 Cir. 1/4/10) (relator has an adequate remedy on appeal as to his evidentiary claims and his ineffective assistance claim may be raised on application for post-conviction relief).
 

 [5]
 

 .
 
 State v. LeBlanc,
 
 unpub., 2010-0007 (La. App. 4 Cir. 1/11/10) (defendant may raise the issues on appeal, noting his January 6, 2010 conviction).
 

 [6]
 

 .
 
 State v. LeBlanc,
 
 unpub., 2010-0130 (La. App. 4 Cir. 2/3/10) (stating that after defendant’s sentencing he may request the documents he seeks in conjunction with his appeal).
 

 [7]
 

 .
 
 State v. LeBlanc,
 
 unpub., 2010-0480 (La. App. 4 Cir. 4/6/10) (failure to comply with Rules 4-2, 4-3, and 4-5 of the Uniform Rules of Louisiana Courts of Appeal).
 

 [8]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [9]
 

 . At that time the lowest grade of the offense of illegal possession of stolen things was when the value of the stolen thing was less than one hundred dollars.
 

 [10]
 

 . Similarly, the valuation of a stock six months before or after a certain date is no indication of its value on a certain date, espe-dally in times of significant market fluctuations such as the times we are currently in.
 

 [11]
 

 . See
 
 State v. Higgins,
 
 2003-1980, p. 1 (La.4/1/05), 898 So.2d 1219, 1224 (‘‘[W]e reverse the defendant’s first degree murder conviction and death sentence, but find the record supports the conclusion that the defendant is guilty of second degree murder and
 
 remand the case to the trial court for entry of [sic] judgment of guilty of second degree murder and for
 
 resentencing....” (emphasis added));
 
 Williams,
 
 610 So.2d at 130 ("The portion of the judgment of the court of appeal reversing the conviction of possession of stolen property valued at $500.00 or more is affirmed, but
 
 the case is remanded to the district court for entry of a judgment of conviction of possession of stolen property valued at less than $100.00 and for resentenc-ing."
 
 (emphasis added)).
 

 [12]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).